*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. A. BURBARY, Minor.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Petitioner,

v

AMY LYNN BURBARY,

        Respondent-Appellant,

and

STEVEN THOMAS AMRHEIN,

        Defendant-Appellee.

UNPUBLISHED
March 07, 2025
9:09 AM

No. 371464
Wayne Circuit Court
Juvenile Division
LC No. 2023-000972-NA

---

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER[*], JJ.

PER CURIAM.

      Respondent-mother appeals as of right the order of the Wayne Circuit Court granting sole legal and physical custody of LAB to defendant-father. We affirm.

## I. FACTS

      This matter began as a child protective proceeding initiated against respondent-mother in April 2023. LAB is autistic and suffers from a speech disorder. The Department of Health and Human Services ("DHHS") received a complaint alleging respondent-mother was on methamphetamine, there was drug paraphernalia throughout the home, and she was failing to

---

[*] Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

-1-

properly supervise LAB because of her drug use. The complaint further alleged respondent-mother had stolen a large sum of money from her estranged husband, and her boyfriend recently overdosed on heroin inside the home. As a result, the DHHS visited the home and respondent-mother admitted to recent drug use but denied LAB was present. The DHHS later received police reports confirming the boyfriend's overdose and indicating instances of domestic violence between respondent-mother and her estranged husband. Defendant-father was not a party to the child protective proceeding, and LAB was placed with defendant-father while the investigation was ongoing.

In June 2023, the DHHS filed a petition requesting the trial court exercise jurisdiction over LAB. The trial court found respondent-mother's substance abuse struggles prevented her from properly caring for LAB, there was a substantial risk of harm to LAB if he remained with her, and it was contrary to the welfare of LAB to remain in respondent-mother's home. The trial court exercised jurisdiction over LAB after respondent-mother made admissions regarding the domestic violence and her drug use. Respondent-mother was ordered to participate in a parent-agency treatment plan ("PATP"), consisting of: (1) a psychological evaluation; (2) individual counseling; (3) domestic violence counseling; (4) a substance abuse assessment with all recommended follow-up; (5) maintaining contact with her case worker; (6) obtain a legal source of income; (7) obtain suitable housing; (8) attend court, regular visitation, and all medical appointments as required; (9) sign any necessary releases for DHHS; and (10) participate in parenting classes.

Respondent-mother's progress with her PATP was slow. Service providers were unable to contact her and wanted to terminate her from services. Respondent-mother relapsed multiple times. Respondent-mother missed scheduled parenting time because of her failure to timely confirm or canceling. Respondent-mother reportedly had transportation issues but refused bus tickets when offered. The DHHS reported concerns regarding respondent-mother's lack of interaction and bond with LAB.

In February 2024, defendant-father moved to modify custody, requesting sole physical and legal custody of LAB. In April 2024, a hearing was held before a trial court, where the DHHS reported respondent-mother had not completed any court-ordered services and was terminated from all services at the end of 2023. While respondent-mother did re-enroll in services in January 2024, the DHHS reported she had minimal progress and only completed the psychological evaluation. Moreover, respondent-mother's parenting time attendance was inconsistent and she did not participate in LAB's educational needs. With defendant-father, LAB was described as a "very engaged" and "totally different child," but "reverses back into lack of communication" when with respondent-mother. The DHHS expressed concerns regarding respondent-mother's moral fitness and aggression. Respondent-mother's drug tests were positive for cocaine.

Defendant-father testified he did not receive any financial support from respondent-mother, LAB was not receiving ABA therapy when living with respondent-mother, who did not participate in any educational or special services for LAB, and respondent-mother had never contacted defendant-father to inquire about LAB's needs. Defendant-father explained LAB was not engaged with respondent-mother during her visits and he sometimes fought with defendant-father against attending parenting time. Defendant-father opined respondent-mother's parenting time had a negative effect on LAB.

The trial court granted sole legal and physical custody to defendant-father, finding it was in the best interests of LAB. Respondent-mother's visitation rights were reserved until further order of the court. Respondent-mother now appeals.

## II. LEGAL ANALYSIS

Respondent-mother argues the trial court clearly erred in granting sole legal and physical custody to the father because the trial court failed to address all of the required best-interest factors under MCL 722.23 on the record. We disagree.

In custody cases, this Court applies three standards of review. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 2.

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. Specifically, [this Court] review[s] under the great-weight-of-the-evidence standard the trial court's determination whether a party demonstrated proper cause or a change of circumstances. A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

When a custody dispute arises, the trial court "may, in the best interests of the child, modify its previous orders or judgments for proper cause shown or because of change of circumstances[.]" *In re AP*, 283 Mich App 574, 600; 770 NW2d 403 (2009); MCL 722.27(1)(c). The party seeking a change of custody must first establish a change of circumstances by a preponderance of evidence. *Id*. The trial court found a change in circumstances existed after taking judicial notice of the ongoing the DHHS neglect proceedings against respondent-mother. LAB was removed from her care and placed with defendant-father, where LAB had resided since. This Court has held that such a removal constitutes a change of circumstances. See *In re AP*, 283 Mich App at 603-604. As such, the threshold showing was met regarding a change of circumstances.

If the party seeking to modify an existing custody order successfully establishes proper cause or a change in circumstances, "the trial court may reopen the custody matter and hold a hearing to assess whether the proposed modification is in the child's best interests." *Pennington v Pennington*, 329 Mich App 562, 571; 944 NW2d 131 (2019). "Before making a custody determination, the trial court must determine whether the child has an established custodial environment with one or both parents." *Bofysil v Bofysil*, 332 Mich App 232, 242; 956 NW2d 544 (2020). A child's custodial environment is established "if over an appreciable time the child

naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c).

> An established custodial environment depends upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence.

> * * *

> When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would not modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. [*Sabatine v Sabatine*, 513 Mich 276, 286; 15 NW3d 204 (2024) (quotation marks and citations omitted).]

Once the court has determined the applicable burden, it must then determine whether a change in the established custodial environment is in the child's best interests. *In re AP*, 283 Mich App at 602. The best interests of the child are determined by considering the following factors:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23]

The trial court found an established custodial environment had existed with defendant-father since May 2023, when LAB began living with defendant-father full-time. The trial court found defendant-father had a stable home for LAB, was morally fit and able to care for LAB, and LAB was happy and making great progress with defendant-father. Further, defendant-father was "providing for the care and support of [LAB] emotionally, socially, and is providing all of his necessities of life." At this point, the trial court should have then articulated on the record the applicable burden of persuasion for any custody change determination, but failed to do so. Because a custody change would not modify the established custodial environment, defendant-father was required to prove a change in custody was in LAB's best interests by a preponderance of the evidence. See *Sabatine*, 513 Mich at 286.

Respondent-mother does not argue that any of the trial court's findings were against the great weight of evidence, but contends that the trial court clearly erred in failing to specifically place all of the factors on the record and explicitly state which factor favored each parent. While the trial court did not individually refer to each best-interest factor on the record, the trial court did make numerous findings of fact and referred to the factors. The trial court first took judicial notice of the CPS neglect proceedings against respondent-mother, which contained an expansive evidentiary record, before finding that granting sole legal and physical custody to defendant-father was in LAB's best interests because respondent-mother: (1) had not complied with her PATP; (2) failed to complete any court-ordered services; (3) was not successfully participating in LAB's care or in parenting time with LAB; (4) was struggling with substance abuse issues leaving her morally unfit; and (5) showed signs of aggression, which negatively impacted LAB.

When analyzing the best-interest factors, the court's findings and conclusions "need not include consideration of every piece of evidence," but the record "must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *In re*

*AP*, 283 Mich App at 605. The record here is sufficient to show that a preponderance of the evidence supported the trial court's findings.

Factor (a) addresses the "love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The DHHS testified to the concerns regarding the lack of bond between respondent-mother and LAB, and the trial court found her limited parenting time with LAB was "unsuccessful." The trial court further found respondent-mother's aggressive behavior was negatively impacting LAB because "the only time those type of aggressive behaviors [in LAB] arise is when [LAB] has been in the company of" respondent-mother. Factor (b) concerns the "capacity and disposition" of the parents to provide the child with "love, affection, and guidance" and to continue the child's education and religious upbringing. MCL 722.23(b). Factor (c) concerns the capacity of the parties "to provide the child with food, clothing, medical care or other remedial care" along with material needs. MCL 722.23(c). The trial court found no issue regarding defendant-father's ability to care for LAB, whereas respondent-mother did not have the ability to provide for and care for LAB. The trial court found respondent-mother had not completed any parenting classes and did not fulfill LAB's educational needs by participating in the special services he requires.

Factor (d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Factor (e) addresses "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found an established custodial environment had existed with defendant-father since May 2023, who had "a proper home for [LAB] and [LAB] does enjoy residing with [the father] and all of his needs are being met in the home of [the father]." The trial court acknowledged respondent-mother previously pleaded no contest to improper supervision of LAB, and further found respondent-mother's living situation was "very unstable in that [DHHS] has no knowledge as to where specifically she's living at this time." Factor (f) concerns the parties' "moral fitness." MCL 722.23(f). The trial court found respondent-mother's "moral fitness is at issue due to her substance abuse and domestic violence and the other issues that she has." Conversely, the trial court found there was "no issue relative to [defendant-father]'s moral fitness nor his ability to care for the child." Factor (g) concerns the "mental and physical health of the parties involved." MCL 722.23(g). The trial court acknowledged respondent-mother failed to complete any of her court-ordered services, which included both individual counseling and substance abuse counseling.

Factor (h) concerns the "home, school, and community record of the child," and factor (i) is "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference." MCL 722.23(h)-(i). The record indicated LAB was excelling under defendant-father's care. The trial court found LAB enjoyed living with defendant-father, whereas LAB was aggressive when attending parenting time with respondent-mother. The trial court did not indicate whether LAB expressed a preference. Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship" with the other parent. MCL 722.23(j). The record indicated defendant-father helped to facilitate parenting time with respondent-mother. The trial court found parenting time was unsuccessful. Factor (k) addresses domestic violence, which the trial court found was an issue respondent-mother struggled with, reiterating she pleaded no contest to allegations of domestic violence. MCL 722.23(k).

The trial court's factual findings were not against the great weight of evidence, and accordingly, the court did not abuse its discretion when granting sole legal and physical custody to defendant-father.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer